J-S16021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1155 MDA 2021 |

Appeal from the Decree Entered August 12, 2021,
in the Court of Common Pleas of Adams County,
Orphans' Court at No(s):  RT-14-2020.

| | | |
|---|---|---|
| IN THE INT. OF: A.J.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.S.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1156 MDA 2021 |

Appeal from the Decree Entered August 12, 2021,
in the Court of Common Pleas of Adams County,
Orphans' Court at No(s):  RT-15-2020.

| | | |
|---|---|---|
| IN THE INTEREST OF: W.A.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.S.K., FATHER | : | |
| | : | |
| | : | |
| | : | No. 1157 MDA 2021 |

Appeal from the Decree Entered August 12, 2021,
in the Court of Common Pleas of Adams County,
Orphans' Court at No(s):  RT-4-2021 A.

| | | |
|---|---|---|
| IN THE INTEREST OF: W.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1199 MDA 2021 |

Appeal from the Order Entered August 11, 2021,
in the Court of Common Pleas of Adams County,
Juvenile Division at No(s):  CP-01-DP-0000040-2019,

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1200 MDA 2021 |

Appeal from the Order Entered August 11, 2021
In the Court of Common Pleas of Adams County Juvenile Division at
No(s):  CP-01-DP-0000056-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: P.L.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.K., FATHER | : | |
| | : | |
| | : | |
| | : | |

- 2 -

J-S16021-22

Appeal from the Order Entered August 11, 2021
In the Court of Common Pleas of Adams County Juvenile Division at
No(s):  CP-01-DP-0000057-2018

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 17, 2022**

In these consolidated matters, A.K (Father) appeals the orphans' court decision to terminate his rights to his three children – 4-year-old daughter, A.J.K; 3-year-old, son P.L.K.; and 2-year-old, son W.A.K.– pursuant to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(5), (8) and (b).[1, 2]  Father also appeals the decision to change the goal of the dependency proceedings from reunification to adoption, pursuant to the Juvenile Act. **See** 42 Pa.C.S.A. § 6351(f). After careful review, we affirm.

The orphans' court opinion, filed pursuant to Pa.R.A.P. 1925(a), provides the relevant factual and procedural history:

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Our review of the record indicates that the Adams County Children and Youth Agency ("Agency") also petitioned for termination under Section 2511(a)(1) and (a)(2).  The orphans' court decrees granting termination did not specify under which grounds it granted the Agency's respective petitions.  However, in its Pa.R.A.P. 1925(a) opinion, the court clarified that it terminated under Section 2511(a)(5) and (a)(8).

[2] We also note that the court terminated the rights of H.Y. (Mother).  She similarly appeals the court's termination and goal-change orders.  Those appeals are separately listed before this panel. **See** 319, 320, 321 MDA 2022; **See also** 1196, 1197, 1198 MDA 2021.

From the beginning of this litigation, the [parents'] mental health issues were identified as the root cause for the Children's removal from their home. Initial removal for two of the three Children occurred on November 19, 2018. [FN2]

> FN 2: At the time, the third child, W.A.K., was not yet born. [3]

At the time, the [parents'] mental health issues and parenting limitations resulted in nutritional issues for the Children, their failure to thrive, and safety risks. Although the Adams County Children and Youth Agency ("Agency") made effort[s] through voluntary services for approximately two months to avoid an adjudication of dependency, the same proved unsuccessful due to the [parents'] indifference to developing necessary skills for the Children's development. [(A.J.K. and P.L.K. were adjudicated dependent on November 29, 2018.)] At the initial disposition hearing following adjudication, both [parents'] were clearly aware that the goals in working towards reunification required participation in a parenting skills program, undergoing mental health evaluations and complying with recommended treatment, adequately addressing the Children's medical needs, and obtaining stable housing. Early in the litigation, the Appellants' relationship to each other, including a history of domestic violence, poor interpersonal communication, and hostility, all fueled by their respective mental health issues, was recognized as an impediment to successful reunification with the Children.

Shortly following the dispositional hearing, during an overnight unsupervised visit with the [parents], P.L.K. suffered bruising and fractures of his extremities, which a medical expert opined were the result of physical abuse. Over approximately the next 12 months, Mother was attending individual counseling; however, both [parents] were unsuccessfully discharged from the Nurturing Parent Program. Nonetheless, the Agency continued to work with the family towards reunification, and the [parents] once again began [] visits. Following such a visit on December 8, 2019, it was observed that P.L.K. had bruising on both

---

[3] W.A.K. was born in August 2019.

ears and a nondisplaced fracture of the left first metatarsal of his foot. Once again, medical experts opined that the injuries were indicative of physical abuse. Unsupervised visits with the Children were suspended as the Agency continued to work with the [parents] towards the originally identified reunification objectives. Citing a lack of progress on the part of the [parents] towards achieving the reunification objectives, on September 28, 2020, the Agency filed petitions to terminate the [parents'] parental rights.

Throughout the 22-month period from initial placement to the filing of the termination petitions, neither parent successfully completed parenting classes; in fact, both were unsuccessfully discharged on at least one occasion. Although at the time of the filing of the termination petitions, both [parents] were attending parenting classes, the provider opined that Mother was only going through the motions and not substantively embracing the information and that Father was openly hostile to the providers. Indeed, subsequent to [the] filing of the petitions, both [parents] were unsuccessfully discharged for a second time.

Although Mother was attending mental health counseling, it had little impact on her behavior. For instance, in 2020, police were called to the [parents'] residence on at least nine different occasions for domestic violence. The [parents] had separated on at least two separate occasions, and a protection from abuse order was obtained by Mother against Father. Mother reported to Agency staff that she was "at her breaking point" and was harboring thoughts of self-harm. Additionally, the [parents] faced two separate sets of criminal charges for endangering the welfare of children related to the two independent unexplained occasions of bodily injury to P.L.K. Although outpatient therapy for co-parenting was provided to the [parents], they were discharged due to their inability to meaningfully communicate as the therapist described a "high relationship conflict and individualism" in their approach to their relationship. Their lack of substantive grasp of the treatment aimed at addressing the reasons for the Children's original placement stalled successful reunification. Moreover, the [parents'] inability and/or lack of interest to address the pending criminal charges and, more importantly, bail conditions that limited their visits

with the Children impeded efforts at increasing the [parents' parental bond] with their Children. The end result of the [parents'] failure to prioritize their treatment needs and subsequent reunification with the Children resulted in A.J.K. being in care for approximately 27 of 44 months of her life; P.L.J. being in care for approximately 27 of 33 months of his life; and W.A.K. being in care for approximately 20 of 24 months of his life, significantly impacting the Children's ability to bond with either Mother or Father.

Trial Court Opinion (T.C.O.), 10/12/2021 at 2-4 (footnote added).

The orphans' court subsequently granted the Agency's petitions under 23 Pa.C.S.A. § 2511(a)(5), (8) and (b). The court also changed the goal of the dependency proceedings from reunification to adoption. Father appealed both the termination decree and the goal change order. He presents the following two issues, which we have re-ordered for ease of disposition:

> 1. Did the [orphans'] court abuse its discretion or commit an error of law in holding that [the Agency] proved by clear and convincing evidence that the issues leading to the removal or placement of the [Children] continued to exist, and that [Father] cannot or will not remedy the conditions that led to placement pursuant to 23 Pa.C.S.A. § 2511(a)(5) and (a)(8)?
>
> 2. Did the [dependency] court abuse its discretion or commit an error of law in determining that [the Agency] made reasonable efforts to effectuate the permanency goal of reunification with [Father] and that the permanency goal should be changed to adoption?

Father's Brief at 4.

We begin our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are

- 6 -

supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). We add that we may uphold a termination decision if any proper basis exists for the result

reached. **In re C.S.**, 761 A.2d at 1201. Importantly, we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We observe that Father does not challenge termination under Section 2511(b), thereby conceding that termination was established under the second prong of the bifurcated analysis. Thus, we limit our focus to Section 2511(a). We address Section 2511(a)(8), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

To terminate parental rights under Section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more from the date of the removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. **In re K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted). Termination

under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused the placement or the availability or efficacy of the services provided by the local children and youth agency. *K.Z.S.*, 946 A.2d at 759 (citation omitted).

In his first appellate issue, Father only challenges one aspect of the court's Section 2511(a)(8) analysis – namely, whether the conditions that led to the Children's removal continued to exist. In his Brief, Father acknowledges that the conditions that led to removal included concerns about his parenting: the improper feeding of the Children; their missed medical appointments; and P.K.'s failure to thrive. *See* Father's Brief at 22. Father conceded that additional concerns arose during the dependency proceedings – issues such as domestic violence and mental health. *Id.* at 23.

Still, Father argues that all these conditions have either been resolved, or to the extent that they still exist, the conditions are excusable. For instance, he cites his involvement in a parenting program to show that he remedied the parenting concerns. Father also argues that his work schedule prevented him from participating in many of the Children's medical appointments. *Id.* As for the domestic violence issue, Father claims that the concern was "due to the age and maturity of the parents (age 20 years old) which was exacerbated by the stress of [the Agency's] involvement and the placement of their Children." *Id*. at 23-24. Finally, he contends that he was never afforded an opportunity to demonstrate his ability to co-parent as his

in-person contact was suspended, due to the dependency court orders and the bail conditions from his criminal charges. ***See generally id.*** at 23-24.

By contrast, the Agency argues that A.K. and P.K. were initially adjudicated dependent due to concerns for the mental health of both parents and the effect that these concerns had on the Children's safety. The Agency contends that it implemented various services to address these issues, all of which was unsuccessful. ***See*** Agency's Brief at 12-13.

Finally, we observe the rationale of the orphans' court:

> Unquestionably, the [parents'] failure to take advantage of the Agency-provided mental health services significantly frustrated the Agency's repeated efforts to move towards reunification. Mental health issues not only hampered the [parents'] ability to provide adequate parental care but also, equally importantly, created significant physical safety risks for the Children if they returned to the [parents'] care. One need look no further than the two separate allegations of physical abuse to P.L.K. as well as an overwhelming history of domestic violence between the [parents] to conclude [that the parents'] home was an environment saturated by hostility. Consequently, the [parents'] mental health issues, if left untreated, would lead to violent consequences for the Children because these issues were the generator of the hostility the Children experienced. Indeed, caseworkers testified to their concern over the safety risks of returning the Children to such an environment.
>
> […]
>
> Neither [parent] has successfully completed parenting skills or substantively grasps the skills intended to be taught by such classes. Outpatient therapy for co-parenting has proven equally unsuccessful due to [Father's] inability to restrain [his] hostile impulses, frustrating meaningful communication and cooperation. Additionally, Father has refused to participate in mental health counseling[.] At the July 30, 2020 permanency reviewing hearing, […] the

- 10 -

> Agency verbally expressed its intention to move towards termination[.] […] Incredibly, even after notice of the Agency's intent, police were called to the [parents'] residence on three separate occasions for domestic violence in the month following such notice. The record is replete with objective evidence that the conditions that led to removal and placement of the Children continued to exist.

T.C.O. at 4-5, 6; **see also id.** at 11.[4]

After review, we are not persuaded by Father's argument that he was prevented from demonstrating his ability to parent. After all, the unsupervised visitations were suspended due to Father's conduct. Moreover, Father has not addressed the conditions which led to the Children's placement, as evinced by his failure to participate or complete the programs designed to alleviate those concerns. Nor are we persuaded that some of the conditions were excusable. The Children's lack of medical attention cannot be attributed to Father's busy work schedule. Domestic violence issues cannot be attributed to Father's age or immaturity. Ultimately, we conclude the court did not abuse its discretion when it determined that the conditions which led to the Children's removal continued to exist.

Because Father challenges no other element of the Section 2511(a)(8) analysis, nor the second prong of the termination analysis under Section 2511(b), Father's appeal may end here. Father's next appellate issue – whether the Agency failed to provide reasonable services and whether the

---

[4] To address the question of whether the causes of the Children's removal still exist, the orphans' court adopted that portion of its discussion under Section 2511(a)(5) which also may be applied under Section 2511(a)(8).

dependency court erred when it changed the goal from reunification to adoption – has no bearing on whether the termination was proper. But as a matter of prudence, we briefly discuss these claims.

While agencies must provide reasonable efforts to enable parents to work toward reunification with their dependent children, the remedy for an agency's failure to provide services is not to punish the child by denying termination; instead, the remedy is to conclude on the record that the agency has failed to make reasonable efforts, which imposes a financial penalty on the agency. **See In re D.C.D.**, 105 A.3d 662, 675-76 (Pa. 2014).[5] It affords no relief to the parents.

Even if we reached the merits of this question, we would agree with the court's conclusion that the Agency did, in fact, make reasonable efforts. The record plainly shows that the Agency offered numerous services to assist Father with achieving reunification. That Father did not achieve reunification through these services does not mean that the Agency failed to make reasonable efforts.

_____

[5] We note that courts must consider the reasonable services available to the parent under Section 2511(a)(5) (providing for consideration of whether "the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time"). **D.C.D.**, 105 A.3d at 672-73. However, Section 2511(a)(8) does not include such a consideration. **See K.Z.S.**, 946 A.2d at 759. As we may affirm under any valid ground, and we affirm under Section 2511(a)(8), we need not evaluate the Agency's services under Section 2511(a)(5) as part of our review of Father's termination appeal.

Lastly, we address Father's allegation that the dependency court erred when it changed the goal of the dependency proceedings from reunification to adoption. We begin by observing that this issue is moot in light of our decision to affirm the termination decrees. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (citing *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.")).

Even accepting, for the sake of argument, that Father's claim is not moot, we would conclude he is not entitled to relief. We review goal-change orders pursuant to an abuse-of-discretion standard of review. *D.R.-W.*, 227 A.3d at 917 (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)). As such, we must accept the court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. *Id.*

The Juvenile Act governs proceedings to change a child's permanent placement goal. 42 Pa.C.S. §§ 6301-6375. Dependency courts must apply the following analysis:

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's

safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citations and quotation marks omitted).

Our discussion above indicates the Children have been in placement for the requisite timeframe, and it is clear that Father cannot remedy those conditions at any point in the foreseeable future. Meanwhile, the Children are in a pre-adoptive foster home; the placement is appropriate and remains necessary. Changing the Children's placement goals to adoption would be in their best interests.

Based on the foregoing, we conclude: the orphans' court did not commit an error of law or abuse its discretion when it terminated Father's rights under Section 2511(a)(8); the Agency made reasonable efforts; and even if Father's goal-change challenge were not moot, we would conclude the court's order was proper.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2022